This was a petition filed at the Spring Term, 1848, of Guilford Superior Court, for permission to emancipate a negro boy named Alvis, and other slaves named. The petition in substance sets forth that some time about 1837 James Davis (450) died, having first made and published his last will and testament, which was afterwards admitted to probate, and his widow, Sophia Davis, who was named therein sole executrix, duly qualified as such; that the said Sophia Davis died about 1848, having duly made and published her last will and testament, which was duly admitted to probate, but of which she appointed no executor; that the petitioner, Robert Caffey, has been duly appointed administrator with the will annexed of the said James Davis, and the other petitioner, Jane Caffey, administratrix, with the will annexed of the said Sophia Davis. The petition further set forth that the said James Davis by his said will, among other things, bequeathed and directed as follows: "One negro girl named Nelly, and one mulatto named Nehemiah, I give them to my wife (said Sophia) during her natural life or widowhood, then to my son, Michael C. Davis, to him and his heirs forever, except Nelly and Nehemiah are to be free, if they can comply with the requisition of the law of this State; and if they cannot comply with the law to be free, and Michael C. Davis should die, without any heirs of his body, Nehemiah and Nelly may choose their own homes, where they like to live, and is to be sold privately at the valuation of two men." That, between the making of the will of the said James Davis and his death, the slave Nelly had one child named Wright, which was sold by the said Sophia as executrix to one M. C. Davis, who afterwards sold and conveyed the same back to the said Sophia; and that after the death of the said James Davis the said Nelly had another son by the name of Alvis. The petition further sets forth that Michael C. Davis, son of the testator, James Davis, is dead, leaving an only child, the defendant James C. Davis, an infant, of whom Robert C. Rankin is guardian. The petition further sets forth that the said Sophia Davis, by her last will, among other things, bequeathed and directed as follows: "I (451) give and bequeath to my grandson, James C. Davis, the only son of my son Michael Caffey Davis, deceased, one negro boy named Wright and one negro boy named Alvis, on condition, if Nehemiah and Nelly, their father and mother, comply with the laws of this State and go free, it is my will they should go with them, and not be kept back on account of their age, and if not, then these negroes, Wright and Alvis, must stay with their father and mother, and not be hired out; *Page 321 
and if not, they must have the same chance of their father and mother in choosing homes, and be sold to the same person at the valuation of the same two men that value their father and mother according to my husband's (James Davis) will; and if James C. Davis dies, not leaving no heirs of his own body, and these negroes cannot comply with the requisitions of the laws of this State and choose their homes and is valued, the money, on conditions if James C. Davis leaves no child of his own, if he does it is theirs, if not, it must go to the use of my stepchildren. It is my will they never shall be parted from their parents." The petition further sets forth that Nehemiah is about the age of forty-five, Nelly about forty, Wright about twelve and Alvis about nine years of age, that the petitioners are desirous to emancipate all four of the said slaves, as requested in the said wills, but that Robert C. Rankin, as guardian of the infant, James C. Davis, objects thereto, so far as regards the boy Alvis. The petition further sets forth that the said Sophia willed and bequeathed to the said James C. Davis other property, greater in value than the said boy Alvis, and that the petitioners are advised that the said James C. Davis cannot hold both with and against the will of the said Sophia, and that, if he takes the legacy given him in the said will, he cannot refuse to let the said boy Alvis be emancipated; and the petitioners aver that they are ready and willing to give the bonds and security required by law to emancipate all of the said slaves.
The petitioners then pray that advertisement may be (452) made, according to law, that James C. Davis, by his guardian, Robert C. Rankin, be made a party defendant, and that the court will grant them permission to emancipate the said slaves, according to law, and will make such other orders, decrees, and grant such further relief as the nature of their case may require, etc.
Whereupon advertisements were ordered and made, and a subpoena issued and executed, according to the prayer of the petition.
At the Fall Term, 1848, of the said court, Robert C. Rankin, as guardian of the said James C. Davis, by leave of the court, filed an answer in behalf of his ward, in substance and to the effect following: That he admits the execution and probate of the respective wills of James and Sophia Davis, and that the petitioners are the administrators with the wills annexed of the said testators, respectively; the death of M. C. Davis, leaving an only child, the defendant James C. Davis, of whom the defendant Robert is the guardian; the birth of the negro children Wright and Alvis, at the times stated, and the purchase of *Page 322 
Wright by Michael C. Davis, all as set forth in the petition. But he denies that Wright was resold to Sophia Davis, and prays strict proof thereof. He submits that this proceeding is in a court of law, and that a court of law has no power to compel an election; that even a court of equity would not do so in a case like the present, for the reasons he assigns. He avers that he objects to the emancipation of all the slaves named, and prays to be dismissed, etc.
Replication was taken and commissions issued.
At Spring Term, 1850, the following decree was made by the court:
This case coming on to be heard, upon the petition, answer and agreement of the parties, which is in the following words, to wit: "In this case it is agreed that advertisement hath (453) been made according to law; that James Davis made his will at the time it bears date; that Sophia Davis died 9 January, 1848, and made her will at the time it bears date; that James Davis died in April, 1827; that the slaves, Nehemiah and Nelly, are husband and wife, and were so at the date James Davis made his will; that the slave Nelly had one child, to wit, Wright, between the making of the will of James Davis and his death, which said slave, Wright, the said Sophia, as executrix of her husband, James Davis, sold at public auction to Michael C. Davis for $150, then an infant some twelve months old, and duly executed a bill of sale to the said Michael; that the said Michael afterwards sold to the said Sophia Davis the said slave, Wright, for $150; that he conveyed him by bill of sale, and the said Sophia held the said Wright as her own property until her death, and that after the death of James Davis the negro woman Nelly had the other child Alvis." It is considered, ordered, adjudged and decreed by the court that the petitioners may emancipate the slaves mentioned in the petition, to wit, Nehemiah, Nelly and Wright, and that they have leave to emancipate the said three slaves, when they shall enter into bonds, with two sureties, each good and sufficient, payable to the State of North Carolina in the sum of $1,000 for each of the said slaves, Nehemiah, Nelly and Wright, conditioned that the said slave or slaves shall honestly and correctly demean themselves while they shall remain within the State of North Carolina, and that they and each of them will, within ninety days after the granting of the prayer of the petition, leave the State of North Carolina, and never afterwards come within the same.
And the court, being of opinion on the whole case and on the proper construction of the two wills, made also a part of the *Page 323 
case, that the petitioners or either of them did not have the right and power to emancipate the negro slave child, Alvis, born after the death of the testator, James Davis, (454) on the ground stated in the petition or any other, considered and adjudged that the prayer of the petitioners to emancipate the said slave, Alvis, be refused.
From this judgment the petitioners prayed for and obtained an appeal to the Supreme Court.
We do not concur in the view taken in the court below of the proceedings under sec. 59, ch. 111, Rev. St., in regard to the emancipation of slaves. In that court it was assumed that the right of property and the authority of the executor might be contested and their rights adjudicated, and, consequently, that there was an appeal to this Court.
On the contrary, we think the proceeding is ex parte under section 57. The title of the petitioner is presumed to be unquestioned. Under section 59 the authority of the executor is taken for granted, the court gives nojudgment, but merely grants permission to emancipate upon being satisfied that due advertisement has been made and the bonds required executed. This permission to emancipate does not bind the rights of third persons. There is no "adversary suit," and consequently no right of appeal. The proceeding does not fall under the first section or within either the cases enumerated in the second section of ch. 4 of the Rev. St. But it is asked, Why require advertisement if there is no right of contestation? The answer is, because the interest of the real owner may be prejudiced by having his slave under this ex parte proceeding apparently converted into a free person, and sent out of the State, and the petitioner may not be able to answer in damages for the money.
If the petition be under section 57 and the right of property is disputed, upon this suggestion, supported by (455) proper affidavit, the court ought to suspend the proceedings until the right can be settled in the proper action at law. If the proceeding be under section 59 and the authority of the executor is disputed, upon this suggestion properly supported, the court ought to suspend the proceedings until the power of the executor can be settled by a declaration of the rights of the parties in a court of equity: in analogy to the proceeding under a petition for partition, when, if the party sets up claim in severalty, an action at law must be brought. *Page 324 
In this case, for instance, it is suggested that, as the woman Nelly was given to Sophia Davis for life, remainder to Richard Davis, the boy Alvis, after the testator's death, belongs to the personal representatives of Richard Davis, and Sophia Davis could not by her will give any authority to emancipate. The right of property, therefore, as well as the authority, is disputed, and these questions cannot be settled in an ex parte proceeding. At all events, they cannot be conclusively settled, so as to bind the representatives of Richard Davis. So it may be suggested that as James C. Davis takes other property under the will of Sophia Davis, he ought to be put to his election. These are interesting questions, which can only be decided in equity. It manifestly was not the intention of the statute that such questions should be settled under a petition for permission to emancipate slaves.
PER CURIAM. Appeal dismissed.
(456)